# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ANTHONY REYES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Aleta A. Trauger |
| ) | Case No. 3:15-cv-1155 |
| METROPOLITAN GOVERNMENT OF ) | |
| NASHVILLE & DAVIDSON COUNTY, ) | |
| TENNESSEE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

Pending before the court is an unopposed Motion for Summary Judgment (Docket No. 15) filed by the Defendant, the Metropolitan Government of Nashville & Davidson County, Tennessee ("Metro"). For the reasons discussed herein, Metro's motion will be granted.

## BACKGROUND & PROCEDURAL HISTORY

The plaintiff, Anthony Reyes, is an African American man and a former police officer with Metro Police Department. He filed this employment discrimination action on November 3, 2015 based on disciplinary action that was taken against him by Metro, including restrictions on his secondary employment privileges and termination from his position as a police officer. (Docket No. 1.) The Complaint brings claims for racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. ("Title VII").

On October 12, 2016, the court issued an Order temporarily holding this action in abeyance due to the Tennessee Supreme Court's suspension of Mr. Reyes's former counsel, Andy Allman. (Docket No. 14.) The Order provided that the case would remain in abeyance until Mr. Reyes entered the appearance of substitute counsel or until December 9, 2016 (at which

1

point, absent the appearance of substitute counsel, Mr. Reyes would be presumed to be proceeding *pro se*), whichever came first. No appearance of substitute counsel was ever entered.

On February 10, 2017, Metro filed a Motion for Summary Judgement. (Docket No. 15.) Metro attached to its Motion the full transcript of proceedings before the Metro Civil Service Commission Administrative Law Judge Anthony Adgent, in which Mr. Reyes, with representation of counsel, challenged his termination from Metro Police Department. (Docket No. 15-3.) Metro also attached Judge Adgent's Initial Order in those proceedings, as well as the Final Order issued by Bill Farmer, Chairman for Metro's Civil Service Commission. (Docket No. 15-1.)[1] Finally, Metro attached two EEOC charges filed by Mr. Reyes in connection with this matter. (Docket No. 15-2.) The first EEOC charge is dated September 5, 2014 (after disciplinary charges by Metro had been filed against Mr. Reyes) and alleges racial discrimination. This EEOC charge makes the vague allegation that white police officers working for Metro have received less discipline than Mr. Reyes for similar offenses, though the charge does not name any other officer in particular or provide any details about the infractions of other officers or the discipline received. The second EEOC charge is dated October 1, 2014 (after Mr. Reyes was terminated from his position) and alleges retaliation. Metro simultaneously filed a Memorandum in support of its Motion for Summary Judgment (Docket No. 16) and a Statement of Undisputed Material Facts (Docket No. 17).

The key facts contained in Metro's Statement of Undisputed Material Facts and in its Memorandum echo (and cite to) the facts contained in Judge Adgent's Initial Order, which were adopted by Mr. Farmer's Final Order. These facts are as follows:

---

[1] The Final Order by Metro's Civil Service Commission provided Mr. Reyes the right to seek reconsideration by the Civil Service Commission within 15 days or to file an appeal with the Chancery Court of Davidson County within 60 days. Metro represents that no such challenge was filed, and there is no evidence in the record to the contrary.

- Mr. Reyes was a police officer with the North Precinct of Metro Police Department in December of 2013, when he was involved in an accident while driving a Metro patrol car. Upon investigation, Metro made the following findings: that Mr. Reyes was at fault for the accident; that he was not authorized to have been using the patrol vehicle at the time of the accident, while he was performing a secondary employment position; that he was not logged into the patrol vehicle's laptop, which is required whenever the vehicle is in use; and that Mr. Reyes had a prior history of disciplinary infractions and complaints against him, including a history of accidents while using a Metro patrol vehicle.
- As a result, Metro placed restrictions on Mr. Reyes's secondary employment privileges, such that Mr. Reyes would thereafter only be permitted to take secondary employment positions through Metro's own Secondary Employment Unit, through crime reduction initiatives implemented by the North Precinct, or for special events. Mr. Reyes was given a memorandum explaining these restrictions, which were also verbally explained to him by a supervisor, and he signed an acknowledgement of receipt.
- Despite the restrictions, Mr. Reyes continued to work as a courtesy officer for the Grove Apartments, where he was a resident, in exchange for compensation in the form of an $800 per month reduction in his rent. This position did not fall under one of the enumerated exceptions to Mr. Reyes's secondary employment restrictions, and it was a violation of Metro policies for him to continue this employment.
- In January of 2014, Mr. Reyes was transferred from the North Precinct to Metro's West Precinct. Around the same time, Mr. Reyes's term as a courtesy officer with Grove Apartments was scheduled to end, and Mr. Reyes asked his new supervisors for

permission to apply for a renewed term as a courtesy officer at Grove Apartments, without informing his new supervisors of his secondary employment restrictions.

- On February 16, 2014, Mr. Reyes's request for renewed secondary employment at Grove Apartments was denied by Metro due to the restrictions on Mr. Reyes's secondary employment privileges. When asked by a supervisor if he had been working at Grove Apartments, Mr. Reyes told the supervisor that he had not. In fact, Mr. Reyes continued to perform the functions of a courtesy officer for Grove Apartments, and receive the rental reduction compensation, through March 18, 2014. Dishonesty in communications with a Metro supervisor is a violation of Metro policy.

- During this time, Mr. Reyes also looked up information about license plates of vehicles parked at Grove Apartments and shared that information with Grove Apartments staff members who were not Metro law enforcement personnel, in violation of Metro policies.

- On August 28, 2014, Metro filed disciplinary charges against Mr. Reyes on the basis of the above violations.

- On September 23, 2014, Metro held a formal hearing on the disciplinary charges, during which Mr. Reyes was represented by counsel. Metro concluded that Mr. Reyes had violated several Metro policies (including disobeying his secondary employment restrictions, lying to a supervisor, and disclosing protected information to non-Metro personnel), any of which warranted termination, and terminated Mr. Reyes from his position.

The court's review of the transcript of proceedings before Judge Adgent reveals that the facts recounted above are well supported by the testimony at these proceedings. Moreover, in

his own testimony, Mr. Reyes did not contest that he committed the violations identified above. Rather, Mr. Reyes's defense during the proceedings was as follows:

- Mr. Reyes claimed that he was not aware that his work as a courtesy officer was not permitted as per the restrictions. Mr. Reyes specifically testified that he believed that, since the courtesy officer position was advertised on Metro's Secondary Employment Unit website, that it qualified as a Secondary Employment Unit position, even though he had indicated on his application for this position that it was under a different classification, and he was aware that it was not paid through Metro as all Secondary Employment Unit positions are.
- Mr. Reyes further claimed that, when he told his supervisor that he was not working at Grove Apartments, he misunderstood the time frame about which he was being asked. According to Mr. Reyes, he did not mean to say that he had not worked at Grove Apartments at all since the restrictions were issued in December of 2013, but meant only to say that he had not worked there since the scheduled end of his term in February 2014 and pending his renewed application.
- Mr. Reyes also claimed that he did not believe that the functions he continued to perform through March of 2014 qualified as working as a courtesy officer, though he admitted that he continued to receive reduced rent from Grove Apartments.
- Finally, Mr. Reyes claimed that he was unaware at the time that providing information about license plates to non-Metro personnel was a violation of Metro policies, though there is no dispute that his role as a police officer obligated him to understand this policy.

5

There was no evidence presented during the administrative proceedings, nor is there evidence elsewhere in the record, regarding violations of Metro policy by, or discipline of, any Metro police officers aside from Mr. Reyes. Further, there is no evidence in the record to suggest that Metro violated its own policies by restricting Mr. Reyes's secondary employment or by terminating Mr. Reyes for the above listed violations, or that these violations were not sufficient to support these disciplinary actions. Finally, there is no evidence in the record that Metro restricted or terminated Mr. Reyes for any reason other than the violations identified above, or that Metro believed or had reason to believe, at the time the discipline took place, that Mr. Reyes was not actually guilty of committing these violations. The record is further devoid of any evidence that Mr. Reyes's disciplinary proceedings leading to his termination were influenced by his recently filed EEOC filing, or even that the officers conducting the proceedings and making the decision to terminate Mr. Reyes were aware of the EEOC charge.

On February 13, 2017, the court issued an Order continuing the scheduled trial and pretrial conference and stating that the trial dates would be rescheduled, if appropriate, by a subsequent order. (Docket No. 19)

Mr. Reyes has failed to respond to Metro's Motion for Summary Judgment or Statement of Undisputed Material Facts, and he has placed no evidence in the record.

## **LEGAL STANDARD**

In the Sixth Circuit, a plaintiff who fails to address a claim in response to a motion for summary judgment is deemed to have abandoned the claim. *Briggs v. Univ. of Detroit-Mercy*, 611 Fed.Appx. 865, 870 (6th Cir. 2015). Nonetheless, a district court may not use a party's failure to respond as a reason for granting summary judgment "without first examining all the materials properly before it under Rule 56(c)." *Briggs*, 611 Fed.Appx. at 870 (quoting *FTC v.*

*E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014)). This is so because "[a] party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *Id.* Thus, "even where a motion for summary judgment is unopposed (in whole or in part), a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *Id.*

## **ANALYSIS**

In order to establish a *prima facie* claim of Title VII racial discrimination, in the absence of direct evidence of discrimination, a plaintiff must show: 1) that he is a member of a protected class, 2) that he was qualified for his job, 3) that he suffered an adverse employment decision, and 4) that he was replaced by a person outside of the protected class or treated differently than similarly situated non-protected employees. *See, e.g.*, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008); *Fullen v. City of Columbus*, 514 F. App'x 601, 605 (6th Cir. 2013) (citing *Newman v. Fed. Ex. Corp.*, 266 F.3d 401, 406 (6th Cir. 2001)). Mr. Reyes has failed to establish a *prima facie* case of racial discrimination because the record is completely devoid of any evidence that Mr. Reyes was replaced by anyone, let alone someone outside of his protected class, or that any similarly situated officers outside of Mr. Reyes' protected class were treated differently than Mr. Reyes. Further, in light of the fact that the undisputed evidence shows that Mr. Reyes committed several violations of Metro policy that warrant termination, it is not entirely clear that Mr. Reyes can show that he is qualified for continued employment as a Metro police officer.

Similarly, the Sixth Circuit has held that, to establish a *prima facie* claim of retaliation under Title VII, a plaintiff must show the following:

7

> (1) she engaged in activity protected by Title VII; (2) the defendant knew of her exercise of her protected rights; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action. . . . In determining whether there is a causal relationship between a plaintiff's protected activity and an alleged retaliatory act, courts may consider whether the employer treated the plaintiff differently from similarly situated individuals and whether there is a temporal connection between the protected activity and the retaliatory action.

*Barrett, 556 F.3d at 516-17*. Mr. Reyes is unable to establish a *prima facie* case of retaliation because there is no evidence of a causal connection between Mr. Reyes's EEOC filings and the adverse employment actions against him. The undisputed evidence in the record shows that the disciplinary actions against Mr. Reyes were all initiated *before* his first EEOC charge was filed. The restrictions on Mr. Reyes's secondary employment were clearly implemented months before Mr. Reyes filed an EEOC charge. While Mr. Reyes's official termination took place shortly after his first EOOC charge was filed, the termination process was initiated by Metro's filing of a disciplinary action against Mr. Reyes, which took place prior to Mr. Reyes's initial EEOC filing. There is no evidence in the record to show that the intervening EEOC filing in any way impacted the course of those disciplinary proceedings. It is not even clear from the record that the Metro agents who made the decision to terminate Mr. Reyes were aware of his EEOC filing at the time.

Finally, even if Mr. Reyes were able to establish a *prima facie* claim of either discrimination or retaliation, his claims would still fail as a matter of law under the burden-shifting analysis for Title VII claims established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, once the plaintiff establishes a *prima facie* claim, the burden shifts to the defendant to establish a non-discriminatory reason for its action; if the defendant meets this burden, the plaintiff must then prove that the nondiscriminatory reason is mere pretext. *McDonnell Douglas Corp*, 411 U.S. at 804; *see also*

*Grace v. USCAR*, 521 F.3d 655, 677-678 (6th Cir. 2008); *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674-75 (6th Cir. 2013). A plaintiff may prove pretext by showing "that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Pierson v. Quad/Graphics Printing Corp*, 749 F.3d 530, 539 (6th Cir. 2014) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)). Metro has clearly established a non-discriminatory reason for Mr. Reyes's secondary employment restriction and termination, based on his violations of Metro Police Department policies. These violations are well-supported in the record, including by Mr. Reyes' own testimonial admissions. To support any pretext argument, the record contains, at best, testimonial evidence by Mr. Reyes that he did not intend to commit these violations and was not aware that he did so. The record is devoid, however, of any evidence showing that the violations did not take place, that they were not the actual motivation for Metro's decisions, or that they were insufficient to warrant adverse employment actions taken against Mr. Reyes. This evidence is therefore, insufficient to establish pretext under *McDonnell Douglas*.

For these reasons, there is no genuine dispute of material fact, and the undisputed facts show that there is no basis for Mr. Reyes' Title VII claims to survive summary judgment.

## CONCLUSION

For the foregoing reasons, Metro's Motion for Summary Judgment is hereby **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**

Enter this 10th day of April 2017.

ALETA A. TRAUGER
United States District Judge

9